IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY BROWN,                         *

    Plaintiff,                         *

      v.                              *          Civil Action No. RDB-11-00136

BALTIMORE POLICE DEPARTMENT,           *
*et al.*
    Defendants.                        *

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

Plaintiff Anthony Brown ("Plaintiff" or "Brown"), by and through his attorneys, Craig R. Schulman, David I. Weinstein and Schulman, Treem & Gilden, P.A., has brought this action against Defendants Baltimore Police Department ("BPD"), the Baltimore Police Commissioner ("Commissioner"), Frederick H. Bealefeld, III, Former Mayor of Baltimore City, Sheila Dixon, Mayor Stephanie Rawlings-Blake of Baltimore City, the City Council of Baltimore ("City Council"), the State of Maryland as well as Lieutenant John Windle ("Windle") and Sergeant Allen Adkins ("Adkins"). Plaintiff's First Amended Complaint ("Complaint") contains nine Counts. It alleges disparate treatment, retaliation, constructive discharge and conspiracy to deny equal protection under the Fourteenth Amendment of the United States Constitution against all Defendants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 and 42 U.S.C. § 1985 as well as the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20–601 *et seq* ("FEPA"). In addition, the Complaint alleges discrimination and retaliation in violation of 42 U.S.C. § 1983 against the BPD, the Commissioner, the City Council and Former Mayor Dixon as well as violations of 42 U.S.C. § 1986 against Adkins and Windle. Furthermore, the Complaint alleges intentional

infliction of emotional distress in violation of Maryland common law against the BPD, Adkins and Windle.  Finally, the Complaint alleges negligent retention and/or supervision in violation of Maryland common law against the State of Maryland, the BPD, the Commissioner, the City Council and Windle.

Pending before this Court is the Motion of Defendants City Council, Former Mayor Dixon and Mayor Rawlings-Blake to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 8).  Also pending before this Court is Defendants BPD and the Commissioner's Motion to Dismiss the Amended Complaint and/or for Summary Judgment pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 15).  Finally, Defendants Adkins and Windle also filed a Motion to Dismiss the Amended Complaint and/or for Summary Judgment pursuant to Rule 12(b)(6) in this case (ECF No. 21).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).

For the reasons that follow, Defendants City Council, Former Mayor Dixon and Mayor Rawlings-Blake's Motion to Dismiss (ECF No. 8) is GRANTED, and this case is dismissed as to them in all respects.  The Motion to Dismiss and/or for Summary Judgment of the Baltimore Police Department and Commissioner Bealefeld (ECF No. 15) is GRANTED in part and DENIED in part.  Specifically all claims are dismissed as to Commissioner Bealefeld in all respects.  With respect to the Baltimore Police Department all counts are dismissed, except Counts II and IV claiming retaliation in violation of Title VII, 42 U.S.C § 1981 and the FEPA. The Motion to Dismiss and/or for Summary Judgment of Defendants Adkins and Windle (ECF No. 21) is GRANTED in part and DENIED in part.  Specifically, all counts against them are dismissed except for Count IV claiming retaliation under 42 U.S.C. § 1981.

<u>BACKGROUND</u>

Anthony Brown brings this action against Defendants for injuries and damages sustained as a result of alleged employment discrimination practices in violation of Title VII, 42 U.S.C. §§ 1981, 1983, 1985, 1986, the Annotated Code of Maryland and the common law of Maryland. In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to him. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff is African-American and was employed with the Baltimore Police Department ("BPD") from May 6, 1992 until his retirement on August 13, 2009. Pl.'s 1st Am. Compl. ¶¶ 4, 13, 24 (ECF No. 4). Prior to working for the BPD, from 1982 to 1991, Plaintiff served in the United States Army. Am. Compl. ¶ 4. At the times relevant to the Complaint, Brown was a Detective for the BPD, Defendant Adkins was a Sergeant and Defendant Windle was a Lieutenant. *Id.* at ¶ 11-12, 14.

Plaintiff alleges that he suffers from and was diagnosed with Pseudofolliculitis Barbae ("PFB"), a painful skin condition that occurs in some individuals, particularly African American men, after shaving. *Id.* at ¶ 13. General Order C-12 of the BPD, concerning Professional Appearance Standards, prohibits police officers from having facial hair. *Id.* at ¶ 15. However, this order makes an exception for police officers who suffer from PFB allowing them to "clip the beard as closely as medically permitted (normally ¼ inch in length)" as long as a waiver is obtained pursuant to the "Accommodation and Exemption" procedure outlined in the regulation. *Id.*, *see also* Mem. in Opp. of Defs.' Mot. to Dismiss, Ex. No. 2 ¶¶18-19.1 (ECF No. 24-2). Plaintiff thus contends that although his PFB diagnosis was "well-documented and widely known" throughout his career and that he was "presumed to have a legitimate shaving profile,"

Defendant Adkins instructed him to shave on January 13, 2009. Am. Compl. ¶¶ 13, 16. On the same day, Brown acquired a letter from his dermatologist, Dr. Larry H. Gaston, recommending that he be permanently exempted from the shaving requirement. *Id.* at 16; *see also* Pl.'s Compl., Ex. No. 2 (ECF No. 1-2). Despite presenting a copy of this letter to Defendant Adkins and his assistant on January 14, 2009, Plaintiff contends that, on January 16, 2009, in preparation for President Obama's visit to Baltimore City, he was again ordered to shave by both Defendants Adkins and Windle. Am. Compl. ¶ 17-19. Plaintiff also alleges that when he reiterated the fact that he had a shaving profile, Adkins and Windle disregarded his statement and reaffirmed the order. *Id.* at ¶ 19. Plaintiff claims that this order caused him to meet with Gene S. Ryan, the Vice President of the Baltimore Fraternal Order of Police, to discuss the situation. *Id.* at ¶ 20. Plaintiff then alleges that Vice President Ryan instructed him to comply with the order to avoid a potential suspension or the loss of his police powers and privileges. *Id.*

Upon reporting for duty on January 17, 2009, Brown contends that he was not clean-shaven but had sought to comply with the order to the best of his ability while respecting the limitation relating to his condition. *Id.* at ¶ 21. Nevertheless, Plaintiff claims that Defendants Windle and Adkins were dissatisfied with his efforts. *Id.* Plaintiff then alleges that Adkins and Windle proceeded to provide him with a "Bic razor and a small bottle of shaving cream" and instructed him to shave "in front of everyone and without the use of water and/or a mirror." *Id.* Plaintiff also contends that he was not given the opportunity to go to a bathroom facility to shave. *Id.* Plaintiff then alleges that he felt pressured into complying with their instruction as he believed that he had no choice but to comply with it. *Id.* Plaintiff further contends that the incident caused him to suffer "humiliation, embarrassment and mental anguish" as well as

"tremendous physical pain, discomfort and disfigurement" due to the resulting aggravation of his PFB. *Id.*

Following this incident, Plaintiff claims that Lieutenant Colonel Oden[1] arranged a meeting in his office to allow Brown and Adkins to discuss the situation and resolve any remaining issues. *Id.* at ¶ 22. Despite this meeting, Brown alleges that the issues were not resolved and that lingering problems between him and his superior caused him to be denied benefits associated with his rank and tenure. *Id.* Specifically, Plaintiff alleges that he received "an extremely poor" performance evaluation on or about January 24, 2009. *Id.* He further contends that he was not permitted to choose his foot details and vacation days according to his level of experience and that his requests for overtime assignments were routinely denied. *Id.* Brown claims that these actions caused a severe reduction of his pay resulting in financial hardship to himself and his family. *Id.* at ¶ 23. In light of Defendants Adkins and Windle's actions, Plaintiff alleges that he filed a statement with Lieutenant Colonel Oden on May 21, 2009 and then a Charge of Discrimination with the Maryland Commission on Human Rights on May 28, 2009. *Id.* at 24. He further claims that Defendants Adkins and Windle's retaliatory actions forced him to retire from the BPD on August 13, 2009. *Id.*

On October 18, 2010, Plaintiff received the Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") after it essentially rejected his claims. He then filed a nine Count Complaint (ECF No. 1) against the Defendants in this case on January 14, 2011 followed by a First Amended Complaint (ECF No. 4) filed on January 28, 2011.

---

[1] Although the Amended Complaint is unclear as to the identity of the Colonel in paragraph 22, subsequent paragraphs seem to indicate that Lieutenant Colonel Oden is the Colonel in question.

STANDARD OF REVIEW

### I.      Motion to Dismiss Pursuant to Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). In determining whether jurisdiction exists, the district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–769 (4th Cir. 1991). Motions to dismiss for lack of subject matter jurisdiction are appropriate where a claim fails to assert facts upon which jurisdiction may be based. *See Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996). Where a plaintiff has failed to exhaust administrative remedies before bringing a claim, the action should be dismissed under Rule 12(b)(1). *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd* 85 Fed. Appx. 960 (4th Cir. 2004).

### II.      Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Goldsboro*, 178 F.3d at 243.

If the court considers matters outside of the pleadings on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment and provide all parties a "reasonable opportunity to present all material made pertinent to such a motion." Fed. R. Civ. P. 12(b). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). In this case, the parties have submitted materials outside the pleadings, and Defendants the BPD, the Commissioner, Adkins and Windle have filed Motions to Dismiss and/or for Summary Judgment. However, at this stage in the proceedings, it is not necessary for this Court to consider the extraneous materials submitted by the parties, and this opinion will address only the Defendants' Motions to Dismiss.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

ANALYSIS

**I.      Plaintiff's Federal Law Claims Against the City**

In their Motion to Dismiss, Defendants Mayor Rawlings-Blake, Former Mayor Dixon and the City Council of Baltimore (collectively "the City") argue that Plaintiff's Complaint against them must be dismissed for failure to state a claim upon which relief can be granted. Specifically, the City argues that Counts I to III must be dismissed because Plaintiff fails to demonstrate that an employer-employee relationship exists between him and the City. Similarly, the City contends that Count IV through VI should be dismissed due to the lack of an employer-employee relationship and Plaintiff's failure to satisfy his burden under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

   a.   Plaintiff's Title VII claims (Count I to III)

While there is some authority for the proposition that the nature of the City's challenge is based upon the merits, the United States Court of Appeals for the Fourth Circuit has held that the determination as to whether a defendant is an "employer" under Title VII is properly considered

under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Woodard v. Virginia Bd. of Bar Examiners,* 598 F.2d 1345 (4th Cir. 1979). Thus, the Court must weigh the evidence and make a determination as to the Court's subject matter jurisdiction over this matter. *See Oram v. Dalton,* 927 F. Supp. 180, 184 (E.D. Va. 1996).

Title VII provides that "[i]t shall be an unlawful employment practice for an *employer* to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-3(a) (emphasis added). To determine whether an employer-employee relationship exists, the Fourth Circuit has held that the general common law of agency applies. *See Farlow v. Wachovia Bank of North Carolina*, 259 F.3d 309, 313 (4th Cir. 2001). Specifically, courts should consider whether a party can exercise control over the activities of the alleged employee. *See id.* However, this Court has previously held that the "Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for [its] actions" and that a police officer with the BPD is not an employee of the City. *Chin v. City of Baltimore*, 241 F. Supp. 2d 546 (D. Md. 2003). (citing *Clea v. City of Baltimore*, 541 A.2d 1303, 1306 (Md. 1988). Consequently, the City is not Brown's employer, nor does Brown allege as such. For this reason, this Court lacks subject matter jurisdiction over Plaintiff's Title VII claims against the City. Therefore, Plaintiff's Title VII claims against the City are DISMISSED WITH PREJUDICE.

  b. <u>Plaintiff's 42 U.S.C. §§ 1981 and 1983 Claims (Count IV and V)</u>

In Counts IV and V, Plaintiff alleges discrimination and retaliation on the basis of race in violation of 42 U.S.C. §§ 1981 and 1983 against the City. Section 1981(a) provides that: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and

Territory to make and enforce contracts . . . as is enjoyed by white citizens." However, it is clear that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.' " *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). In determining whether a defendant is a "state actor," courts inquire into "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). It is well established that a municipality may be found liable under § 1983 where a municipality causes a constitutional deprivation through an official "policy or custom." *See Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978). The Supreme Court has held that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 375 (1989) (emphasis in original). A municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior. Monell*, 436 U.S. at 694.

Alternatively, liability may exist absent a direct "policy or custom," however, where liability can "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *See Milligan v. City of Newport News*, 743 F.2d 227, 229–30 (4th Cir. 1984). *See also Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) (noting that a "condoned custom" theory may be offered as an alternative basis for § 1983 liability). Where the alleged constitutional deprivation results from municipal inaction, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997). *See also Mason v. Mayor*

*and City Council of Baltimore*, HAR-95–41, 1995 WL 168037, at *4 (D. Md. Mar. 24, 1995) (stating that "[i]f plaintiffs suing under § 1983 can establish that a 'policy of inaction' exists, and that such a policy was the direct cause or moving force behind the alleged constitutional violation, they will be entitled to relief") (citing *Monell,* 436 U.S. at 694). Where the municipality has not directly caused an injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown,* 520 U.S. at 405. *See also Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999) (noting that plaintiffs alleging "deliberate indifference" or a "condonation of an unconstitutional custom" must be wary of "slipp[ing] into that forbidden realm" of *respondeat superior* ).

In this case, Plaintiff has not shown that the City instituted a policy or custom which deprived him of his constitutional rights. The only policy discussed is that of the BPD contained in General Order C-12 concerning the Standards of Appearance applicable to members of the BPD. Not only does Plaintiff fail to plausibly allege that this policy is one instituted and implemented by the City but also, he fails to allege how this policy deprived him of his fundamental rights. Moreover, Plaintiff broadly claims that General Order C-12 is discriminatory in nature when in fact General Order C-12 establishes the standards of appearance that must be maintained by all BPD employees and makes exceptions where they are needed, such as for individuals suffering from Pseudofolliculitis Barbae ("PFB"). Thus Plaintiff fails to show that the City itself caused the constitutional violation.

Alternatively, Plaintiff attempts to show that the City is responsible for the alleged discrimination he suffered through its policy of inaction. Plaintiff claims that the BPD has had a well-known history of discrimination and that the City has failed to "properly discipline

officers." Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ¶¶ 14, 15 (ECF No. 18). However, as indicated above BPD officers are not City employees and the City does not exercise control over the BPD and its employees. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). Therefore, this Court cannot infer the City's liability under the "condoned custom" theory. Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims against the City must fail and, consequently, Counts IV and V are DISMISSED WITH PREJUDICE as to the City.

### c. Plaintiff's Conspiracy Claim (Count VI)

In Count VI, Plaintiff makes a claim of conspiracy in violation of 42 U.S.C. § 1985(3) against the City. Specifically, he alleges that the City "knew and/or should have known of the conspiracy . . . but failed and/or refused to prevent, prohibit and ameliorate" a situation in which he was deprived of "his [constitutional] rights and privileges." Pl.'s 1st Am. Compl. ¶¶ 50-53. "To establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). However, The Supreme Court has held that a "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *see also Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 548-49 (D. Md. 2001). Therefore, Plaintiff cannot state a claim of civil conspiracy under 42 U.S.C. § 1985(3)

against the City or against any Defendants in this case.  Accordingly, Plaintiff's claim in Count VI against all Defendants is DISMISSED WITH PREJUDICE.

**II.      Plaintiff's Federal Law Claims Against the Baltimore Police Department and the Commissioner**

In light of the dismissal of Count VI as to all Defendants, the only remaining federal claims against the Baltimore Police Department ("BPD") and the Commissioner are those asserted under Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983 contained in Counts I to IV.

First, it is well-established that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Services, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).  In *Lissau,* the Fourth Circuit held that only an employer may be held liable for Title VII violations, and that individual liability under the Act "would improperly expand the remedial scheme crafted by Congress." *Id.* at 181.  "Individual supervisors also cannot be liable under § 1981 unless they intentionally cause [an employer] to infringe the rights secured by [that] section." *Luy v. Baltimore Police Dept.*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (internal quotations omitted).  Additionally, "[i]ndividual liability under § 1983 lies only when it is affirmatively shown that the official charged acted personally in the deprivation of rights." *Waters v. Maryland Dept. of Transp.*, WDQ-08-0396, 2009 WL 2757098, at *4 (D. Md. Aug. 26, 2009).  Accordingly, supervisors cannot be held individually liable under Title VII.  While individual liability for supervisors exists under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, it only applies where the act or omission resulting in the infringement of rights was intentionally caused by the supervisor and where the Plaintiff makes an affirmative showing of that fact.

In this case, the Plaintiff has failed to adequately allege the Commissioner's involvement in the events relating to his claims.  Moreover, based on the facts as alleged in the Complaint,

there is no plausible claim that the Commissioner intentionally and personally participated in Plaintiff's deprivation of rights. Thus, the Commissioner is not individually liable under Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Thus, Counts I to V as to the Commissioner in his individual capacity are DISMISSED WITH PREJUDICE.

As suing the Commissioner in his official capacity has the same legal effect as suing the Baltimore Police Department ("BPD"), this Court will address these federal claims only in terms of the BPD. *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). The Fourth Circuit has held that the requirements to establish a *prima facie* case of discrimination are the same under Title VII, section 1981 and section 1983. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)); *Gariola v. Com. of Va. Dept. of General Services.*, 753 F.2d 1281, 1285 (4th Cir. 1985). Thus, if Plaintiff satisfies the *prima facie* case requirements for disparate treatment, retaliation and constructive discharge claims against the BPD under Title VII, he meets those same requirements under 42 U.S.C. §§ 1981 and 1983.[2] The inverse proposition is also true.

In a Title VII case, such as this, where the record contains no direct evidence of discrimination or retaliation, plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Hawkins v. Pepsico*, *Inc.,* 203 F.3d 274, 281 n. 1 (4th Cir. 2000) (noting that the "*McDonnell Douglas*

---

[2] Section 1983 requires that a "person" cause the alleged constitutional violation. A state agency is not a "person" for purposes of section 1983 and therefore may not be found liable under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Although the BPD is traditionally recognized as a state agency, this Court has held that "[t]he Police Department [is] connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment Immunity." *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003) (citing *Hector v. Weglein*, 558 F. Supp. 194, 197–99 (D. Md. 1982)); *see also Munyiri v. Haduch*, 585 F. Supp. 2d 670, 676 (D. Md. 2008) (finding that the BPD may be held liable under section 1983). Therefore, the BPD is a "person" under section 1983 and may be found liable for violations of the statute.

framework applicable to claims of race discrimination applies to retaliation claims as well) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998)). Under this framework, the plaintiff must first make out a *prima facie* case of disparate treatment. If a *prima facie* case is established, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for its adverse employment action. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). If the employer fulfills this reciprocal duty, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual and that his termination was instead racially motivated. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

      a. <u>Disparate Treatment</u>

An employee may demonstrate a *prima facie* case of disparate treatment by showing that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside of his class received more favorable treatment. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). "The central focus of the inquiry is whether the employer has treated 'some people less favorably than others because of their race, color, religion, sex or national origin.' " *Foreman v. Weinstein*, 485 F. Supp. 2d 608, 612 (D. Md. 2007) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). To be adverse an employment action must be discriminatory and must "adversely affect 'the terms, conditions, or benefits' of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)). This Court must determine "whether there was a change in the terms or conditions of his employment which ha[d] a significant detrimental effect on his opportunities for promotion or professional development." *James*, 368 F.3d at 376

(quoting *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)) (quotation marks omitted). Specifically, a decrease in "compensation, job title, level of responsibility or opportunity for promotion" would indicate that an adverse employment action occurred. *Id.*

In this case, Brown only satisfies two of the four elements of a *prima facie* case for disparate treatment. First, he states that he is African-American and therefore belongs to a protected class under Title VII. Second, while Defendants correctly argue that instructing someone to shave is not an adverse employment action, Brown does claim that, after the shaving incident, he was denied opportunities for overtime which led to a tremendous reduction in pay. Moreover, Brown alleges that he was denied the opportunity to choose his foot details and his vacation days in a manner that comported with his rank. Thus, because he makes allegations that his compensation decreased and that he did not receive the benefits associated with his position, Brown has properly stated that he was the victim of adverse employment actions.

However, Brown does not appear to allege that his job performance was satisfactory. He only refers to the poor performance evaluation he received on January 24, 2009, which he suspects was a result of the shaving incident. More importantly, he fails to allege or proffer any evidence that similarly situated employees outside of his class received more favorable treatment. For example, he does not allege that other Detectives outside of his class, but of the same rank, were allowed to work overtime and to elect their foot details and vacation days. Additionally, as far as the shaving incident is concerned, it appears that every officer in the unit was instructed to shave. While PFB is more prevalent in African American men, men of other ethnic groups have been known to suffer from PFB.[3] Yet, Brown does not claim that another

---

[3] *See e.g.* JEANINE DOWNIE, FRAN COOK-BOLDEN & BARBARA NEVINS TAYLOR, A COMPREHENSIVE GUIDE TO ASIAN, OLIVE AND DARK SKIN 137 (HarperCollins Publisher 2004); Arielle N. B. Kauvar, MD, *Treatment of Pseudofolliculitis With a Pulsed Infrared Laser*, 136 ARCH DERMATOL 1343 (2000) (*available at* http://archderm.ama-assn.org/cgi/reprint/136/11/1343.pdf); Wikepedia, Pseudofolliculitis Barbae, http://

officer suffering from PFB was able to avoid the shaving order.  Therefore, Brown fails to state a claim of disparate treatment under Title VII.  Brown's Title VII claim in Count I against the BPD is DISMISSED.

      b.  <u>Retaliation</u>

Plaintiff also makes a retaliation claim under Title VII.  In order to establish a *prima facie* case of retaliation under this statute, Brown must show (1) that he engaged in a protected activity, (2) that his employer took a "materially" adverse action against him and (3) that a causal connection existed between the activity and the adverse action.  *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ-10-0537, 2011 WL 1636405, at *9 (D. Md. Apr. 28, 2011) (*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F. 3d 536, 543 (4th Cir. 2003)).  Title VII protects participation and opposition activity.  42 U.S.C. § 2000e-3(a).  The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII.  *Id.*  Where an employee has opposed any unlawful practice under Title VII, he is also protected from retaliation.  *Id.*  In the Complaint, Brown alleges that he contacted the Fraternal Order of Police regarding Defendants Adkins and Windle's discriminatory practices.  He also claims that he filed internal and external grievances and complaints against these Defendants as well as a Charge of Discrimination against the BPD with the Maryland Commission on Human Rights.  Thus, Brown's Complaint satisfies the first element of a Title VII retaliation claim.

As stated above, Brown also properly claims that materially adverse actions were taken against him thereby satisfying the second element.  Finally, Brown also states that the materially

---

http://en.wikipedia.org/wiki/Pseudofolliculitis_barbae (last visited Dec. 21, 2011); Pseudofolliculitis Barbae, http://http://www.skinsite.com/info_pseudofolliculitis_barbae.htm (last visited Dec. 21, 2011).

adverse actions against him were a result of his complaints. Specifically, he asserts that it is after the shaving incident and after he began complaining about Defendants Adkins and Windle's behavior that he was denied overtime opportunities and other benefits associated with his position such as the ability to elect foot details and vacation days. Therefore, Plaintiff has satisfied the *prima facie* requirements of a retaliation claim under Title VII against the BPD.

      c.  <u>Constructive Discharge Claim</u>

In Count III, the Plaintiff alleged that he was constructively discharged in violation of Title VII. Although Defendant the BPD argues that Plaintiff improperly pled this claim because Title VII does not include a separate cause of action specifically for constructive discharge, the Supreme Court has held that "Title VII encompasses employer liability for a constructive discharge." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004). A plaintiff may establish constructive discharge by showing that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." *Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249, 262 (4th Cir. 2006) (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (internal quotation marks omitted)). Therefore, Brown must show that (1) his employer's actions were intentional; and that (2) a reasonable person would find the resulting work conditions intolerable. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko*, 434 F.3d at 262 (quoting *James*, 368 F.3d at 378 (internal quotation marks and alterations omitted)). In this case, Brown has alleged that he was neglected by Defendants Adkins and Windle, that he received a poor performance review, that his opportunity to choose

his shifts was limited and that his overtime requests were consistently denied. However, Brown does not properly allege that their actions were intentional and that a reasonable person would find the resulting work conditions intolerable. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). Consequently, Brown's statement that Defendant Adkins and Windle acted "with the intent of forcing [him] to resign," does not suffice to state a constructive discharge claim. Pl.'s Am. Compl. ¶ 40 (ECF No. 4). Therefore, Plaintiff's Title VII constructive discharge claim against the BPD is DISMISSED.

In light of the foregoing, it follows that Brown has failed to state a claim for disparate treatment and constructive discharge under both 42 U.S.C. § 1981 and 42 U.S.C. § 1983. The only remaining federal claim against the BPD is Plaintiff's claim of retaliation in violation of Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

### III.    Plaintiff's Federal Law Claims Against Defendants Adkins and Windle

Eight of the nine Counts in the Complaint are asserted against Defendants Adkins and Windle. These Defendants argue for the dismissal of all the counts against them for the following reasons: (1) they are not individually liable under Title VII, (2) Plaintiff failed to state a claim upon which relief can be granted under 42 U.S.C. § 1981 and the Maryland Fair Employment Practices Act (FEPA), (3) Plaintiff pled insufficient facts to establish a *prima facie* claim under 42 U.S.C. §§ 1985(3), 1986, (4) Plaintiff failed to give proper notice of his state law claims, and (5) Plaintiff does not meet the pleading requirements for a claim of intentional infliction of emotional distress under the Maryland common law.

First, because Adkins and Windle were Plaintiff's supervisors, they are not individually liable for the alleged Title VII violations. *Lissau*, 159 F.3d at 180. Therefore, Plaintiff's Title

VII claims against Adkins and Windle contained in Counts I to III are DISMISSED WITH PREJUDICE.

Second, Count IV alleges discrimination and retaliation on the basis of race against Defendants Adkins and Windle in violation of 42 U.S.C. § 1981. "Individuals may be liable under Section 1981 when they 'authorize, direct, or participate in' a discriminatory act." *Atkins v. Winchester Homes*, CCB-06-278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007) (quoting *Manuel v. Int'l Harvester Co.*, 502 F. Supp. 45, 50 (N.D. Ill. 1980)). Because Adkins and Windle allegedly directed and participated in the discriminatory acts against Plaintiff, they are individually liable under 42 U.S.C. § 1981. As a result, Plaintiff must establish the elements of a *prima facie* claim for discrimination and for retaliation in order to state these claims against Defendants Adkins and Windle. *See Luy*, 326 F. Supp. 2d at 688-89. Because Plaintiff alleges the same facts against the BPD, Adkins and Windle, it follows that Plaintiff fails to state a *prima facie* case of disparate treatment against Adkins and Windle, but nevertheless meets the *prima facie* requirements for a retaliation claim against them. Consequently, Plaintiff's § 1981 retaliation claim against Adkins and Windle does not fail. Accordingly, the Motion to Dismiss of Adkins and Windle is DENIED with respect to the Count IV retaliation claim. The § 1981 discrimination claim against them in Count IV is DISMISSED.

Third, Counts VI and VII assert claims under 42 U.S.C. § 1985(3) and 1986 against Defendants Adkins and Windle. This Court dismissed *supra* Count VI concerning the civil conspiracy allegations as to all Defendants. Because a claim under 42 U.S.C. § 1986 requires a showing that Defendants allowed a § 1985 civil conspiracy to take place, there is no basis for a § 1986 claim. Thus, Count VII as to Defendants Adkins and Windle is also DISMISSED WITH PREJUDICE.

IV.     **Plaintiff's State Law Claims (Count I, II, III, VIII and XI)**

Plaintiff asserts three causes of action under state law: (1) employment discrimination retaliation and constructive discharge against all Defendants in violation of the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-601 *et seq* (FEPA); (2) intentional infliction of emotional distress under Maryland common law against Defendants Adkins and Windle; and (3) common law negligent retention and supervision against Defendants the City, the Baltimore Police Department ("BPD"), the Commissioner and Windle.

Because the majority of Plaintiff's federal claims must be dismissed, this Court must determine whether to retain supplemental jurisdiction over the pendent state law claims. *See* 28 U.S.C. § 1367(c)(3). In addressing this issue, the Supreme Court has advised that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over . . . pendent state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citation omitted). The Court of Appeals of Maryland has "often commented that . . . state constitutional provisions are *in pari materia* with their federal counterparts." *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (Md. 2002); *see also Miller v. Prince George's County*, 475 F.3d 621, 631 n. 5 (4th Cir. 2007). As such, the same analysis applies to the Plaintiffs' corresponding state constitutional claims and in the interests of judicial economy, fairness, and convenience, this Court will address the Plaintiffs' pendant state-law claims.

   a.    The Local Government Tort Claims Act's Notice Requirement

The Local Government Tort Claims Act ("LGTCA") requires local governments to defend and indemnify their employees for the tortious acts they commit within the scope of their

employment and without malice.  Md. Code Ann., Cts. & Jud. Proc. § 5-302; *Ashton v. Brown*, 660 A.2d 447, 465-66 (Md. 1995).  Under the Act, the local government retains sovereign immunity, but is required to insure its employees, to a limited extent, for the payment of any adverse judgments.  The LGTCA generally provides that plaintiffs must give local government defendants notice of claims within 180 days of injury.  § 5-304(a).  In addition, the notice must be in writing and state the time, place, and cause of the injury, and it must be given in person or by certified mail to the county solicitor or county attorney.  § 5-304(b)(2)-(3).  The notice requirement is intended to protect a government entity from "meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation."  *Williams v. Maynard*, 754 A.2d 379, 384-85 (Md. 2000) (internal quotation marks omitted).  Courts have held that substantial compliance with the LGTCA's statutory notice requirements may suffice where the purpose of the notice requirement is fulfilled.  *Maynard*, 359 Md. at 385; *Moore v. Norouzi*, 807 A.2d 632, 642 (Md. 2002).  Substantial compliance is satisfied by giving "requisite and timely notice of facts and circumstances giving rise to a claim."  *Faulk v. Ewing*, 808 A.2d 1262 (Md. 2002).

The Plaintiff has the burden of demonstrating that he substantially complied with the notice requirement.  *See White v. Prince George's Cnty.*, 877 A.2d 1129 (Md. App. 2005).  This Court has held that an EEOC notice served within the 180-day timeframe can be used to satisfy the notice requirement because it "provided the identity of the claimant, the time and place of the event, the nature of the claim, and the Plaintiff's intent to pursue litigation."  *See Nelson v. City of Crisfield*, BEL-10-1816, 2010 WL 4455923, at *2 (D. Md. Nov. 5 2010).  Finally, section 5-304(d) provides that "unless the defendant can affirmatively show that its defense has been

prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." In this case, Plaintiff did not give notice in writing, stating the time, place, and cause of the injury, in person or by certified mail to the county solicitor or county attorney as required under § 5-304(b)(2)-(3) of the LGTCA. Moreover, Plaintiff did not meet his burden of demonstrating substantial compliance nor did he make a motion for good cause shown regarding his inability to meet this requirement.

Nevertheless, this Court will review the EEOC charge to determine whether it gave the Defendants sufficient notice to enable them to conduct their own investigation in light of Plaintiff's claims against them. The only Defendants readily identifiable in the EEOC Charge are the BPD, Defendants Adkins and Windle. Pl.'s Compl., Ex. 3 (ECF No. 1-3). Additionally, the only indicated claims are those relating to race based discrimination and retaliation. *Id.* Moreover, the City submitted an affidavit from Justin King, the Chief of the Law Department's Central Bureau of Investigation Department, denying having received a notice of Plaintiff's claims against it. Aff. Of Justin King, ¶¶ 3-4 (ECF No. 15-3). Because the "Maryland Court of Appeals has deemed [the] FEPA to be the state law analogue of Title VII," *Lipton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, JKB-10-276, 2011 WL 4549177, *4 n. 3 (D. Md. Sept. 28, 2011), this Court finds that Defendants BPD, Adkins and Windle received notice of Plaintiff's state law claims of disparate treatment and retaliation. However, this Court finds that all other Defendants were not notified of Plaintiff's FEPA claims, nor were any Defendants notified of Plaintiff's common law claims of intentional infliction of emotional distress and negligent retention and supervision. In addition, because the LGTCA does not waive the BPD's governmental immunity, the BPD cannot be directly named as a defendant in common law tort causes of action. *See, e.g., Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999); *Khawaja v.*

*City of Rockville*, 598 A.2d 489, 494-95 (Md. App. 1991). Consequently, Counts VIII and IX are DISMISSED WITH PREJUDICE as to all Defendants and Counts I, II and III are DISMISSED WITH PREJUDICE as to Defendants City Council, Mayor Rawlings-Blake, Former Mayor Dixon and the State of Maryland for failure to satisfy the LGTCA notice requirement.

b. <u>Plaintiff's Maryland Fair Employment Practices Act Claims</u>

Pursuant to the Maryland Court of Appeals decision in *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007), this Court applies "Title VII case law in adjudicating FEPA claims." *Lipton,* 2011 WL 4549177, at *4 n. 3. *See also Alexander v. Marriott Intern., Inc.*, RWT-9-402, 2011 WL 1231029 (D. Md. Mar. 29, 2011); *Meyers v. Carroll Independent Fuel Co.*, RDB-09-1633, 2011 WL 43085 (D. Md. Jan. 06, 2011). Because supervisors cannot be liable in their individual capacities under Title VII, *Lissau*, 159 F.3d at 180, this Court finds that supervisors cannot be individually liable under the FEPA. Therefore, Counts I, II and III are DISMISSED WITH PREJUDICE as to Defendants Commissioner Bealefeld, Adkins and Windle.

In addition, as this Court held *supra* that Plaintiff failed to state claims of disparate treatment and constructive discharge against the BPD under Title VII, Plaintiff also fails to state these claims under the Maryland Fair Employment Practices Act. Thus, Counts I and III against the BPD are DISMISSED WITH PREJUDICE. The only remaining state law claim against the BPD is that of retaliation in violation of the FEPA.

c.  Plaintiff's Common Law Tort Claims

Even if Plaintiff had complied with the LGTCA notice requirement with respect to his intentional infliction of emotional distress ("IIED") and negligent retention and supervision claims, these claims would fail.

In Maryland, IIED claims are "rarely viable" and are to be used "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995) (internal quotations and citation omitted); *see also Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997).  Thus, to succeed on an emotional distress claim in Maryland, a plaintiff must meet a very high pleading standard.  To establish a claim of IIED, a plaintiff must allege facts that would support the conclusion that: (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) there as a causal connection between the defendant's wrongful conduct and plaintiff's emotional distress, and (4) plaintiff's emotional distress was severe.  *Caldor v. Bowden*, 625 A.2d 959, 963 (Md. 1993) (quoting *Harris v. Jones*, 380 A.2d 611 (Md. 1977)).  To prove that conduct is outrageous, a plaintiff must show that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Harris, 380* A.2d at 614 (quoting Restatement (Second) of Torts § 46 comment d (1965)).

Furthermore, this Court has previously held that poor behavior at the workplace rarely rises to the level of extreme and outrageous conduct.  *See Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2001) ("workplace harassment . . . almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional

distress under Maryland law").  Additionally, Plaintiffs are required to plead the element of severe emotional distress with particularity.  *Arbabi*, 205 F. Supp. 2d at 466.  In this case, Brown has not set forth "specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Chin v. Wilhelm,* CCB-02-1551, 2006 WL 827343, at *9 (D. Md. Mar. 24, 2006).  He has also not alleged facts showing "a severely disabling emotional response, so acute that no reasonable man could be expected to endure it." *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 560 (D. Md. 2005) (internal quotation marks omitted).  Accordingly, Brown's allegations do not sufficiently assert a claim for intentional infliction of emotional distress.  Thus, Count VIII is DISMISSED.

In Count IX, Plaintiff alleges that the City, the BPD, the Commissioner, the State and Defendant Windle were negligent in its supervision and retention of Defendants Adkins and Windle in violation of Maryland Tort Law.  This Court has noted that negligent supervision claims "are derived from the common law [and] may only be predicated on common law causes of action."  *Hammond v. Taneytown Volunteer Fire Company*, CCB–09–0746, 2009 WL 3347327 (D. Md. Oct. 13, 2009).  "Because no common law tort of employment discrimination exists in Maryland, this Court has repeatedly disallowed negligent supervision claims appended to Title VII cases." *Greenan v. Board of Educ. of Worcester County*, 783 F. Supp. 2d 782, 791 (D. Md. 2011) (citing *Davidson–Nadwodny v. Wal–Mart Associates, Inc.*, CCB–07–2595, 2010 WL 1328572 (D. Md. Mar. 26, 2010); *Hart v. Harbor Court Associates*, 46 F. Supp. 2d. 441 (D. Md. 1999); *Demby v. Preston Trucking Co.,* 961 F. Supp. 873 (D. Md. 1997); *Maxey v. M.H.M. Inc.*, 828 F. Supp. 376 (D. Md. 1993)).  Moreover, the Maryland Worker's Compensation Act (MWCA), Md. Code Ann., Labor & Employ. Art, § 9-501 *et seq.* preempts claims of negligent retention and supervision predicated on Title VII. *Preston Trucking Co., Inc*., 961 F. Supp. at

881-82. "Indeed, the MWCA "provides the exclusive remedy for employee injuries arising out of and in the course of employment." *Jarvis v. Fleet Services and Leasing Co.*, DKC-07-3385, 2010 WL 1068146, at * 23 (D. Md. Mar. 17, 2010). Therefore, Plaintiff's negligent retention and supervision claim against all the Defendants must fail. Thus, Count IX is DISMISSED WITH PREJUDICE.

Finally, in Plaintiff's Memoranda in Opposition to Defendants Motions to Dismiss (ECF Nos. 18, 24, & 32), Plaintiff requests additional time to conduct discovery. In light of the foregoing, Plaintiff's requests are MOOT and are DENIED.

CONCLUSION

For the reasons stated above, Defendants City Council, Former Mayor Dixon and Mayor Rawlings-Blake's Motion to Dismiss (ECF No. 8) is GRANTED, and this case is dismissed as to them in all respects. The Motion to Dismiss and/or for Summary Judgment of the Baltimore Police Department and Commissioner Bealefeld (ECF No. 15) is GRANTED in part and DENIED in part. Specifically all claims are dismissed as to Commissioner Bealefeld in all respects. With respect to the Baltimore Police Department all counts are dismissed, except Counts II and IV claiming retaliation in violation of Title VII, 42 U.S.C § 1981 and the Maryland Fair Employment Practices Act. The Motion to Dismiss and/or for Summary Judgment of Defendants Adkins and Windle (ECF No. 21) is GRANTED in part and DENIED in part. Specifically, all counts against them are dismissed except for Count IV claiming retaliation under 42 U.S.C. § 1981.

A separate Order follows.


Dated:          December 21, 2011          /s/_____
                                           Richard D. Bennett
                                           United States District Judge