IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY BROWN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-11-00136 |
| BALTIMORE POLICE DEPARTMENT, *et al.* | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Anthony Brown ("Plaintiff") has requested leave of this Court to file a third amended complaint against Defendants Baltimore Police Department ("BPD"), Lieutenant John Windle ("Lieutenant Windle"), and Sergeant Allen Adkins ("Sergeant Adkins") in accordance with the Memorandum Opinion (ECF No. 35) issued by this Court on December 21, 2011. Pending before this Court are Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 47), Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 48), and Defendant's Response in Opposition to Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 49).[1]  The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). As Plaintiff's Motion for Leave to File a Second Amended Complaint was in error, it will be disregarded by this Court. For the reasons that follow, Plaintiff's Motion for Leave to File a Third Amended Complaint is GRANTED in part and DENIED in part. Specifically, leave to amend is GRANTED as to Count

---

[1] Plaintiff also filed an unopposed Consent Motion to Extend All Pertinent Deadlines to June 25, 2012 (ECF No. 44). As this Court is now reviewing motions filed within the proposed June 25 deadline, Plaintiff's Consent Motion is GRANTED.

One as it applies to the Defendant Baltimore Police Department, and is DENIED as it applies to Lieutenant Windle and Sergeant Adkins. Leave to Amend is GRANTED as to Counts Two, Three, and Four in their entirety.

BACKGROUND

The facts of this case are fully set forth in the Memorandum Opinion issued by this Court on December 21, 2011 (ECF No. 35). A brief summary of the facts will adequately frame the pending motion.

Plaintiff is an African American who was employed by Defendant BPD from May 6, 1992, until he retired on August 13, 2009. Pl.'s Third Am. Compl. ¶¶ 5, 9, 20, ECF No. 48 Attach. 2. At the times relevant to the complaint, Plaintiff was a detective, Defendant Adkins was a sergeant, and Defendant Windle was a lieutenant, all employed by Defendant BPD. *Id.* ¶¶ 5, 7.

Plaintiff alleges he suffers from and has been diagnosed with Pseudofolliculitis Barbae ("PFB"), a painful skin condition that affects some individuals, particularly African American men, after shaving. *Id.* ¶ 9. General Order C-12 of the BPD, concerning Professional Appearance Standards, prohibits police officers from having facial hair. *Id.* ¶ 11. However, as long as a waiver is obtained pursuant to procedure outlined in the BPD's regulation, this order makes an exception for police officers who suffer from PFB, allowing them to "clip the beard as closely as medically permitted." *Id.* Plaintiff contends that Sergeant Adkins instructed him to "update his shaving profile" on January 13, 2009. *Id.* ¶ 12. On the same day, Plaintiff acquired a letter from his dermatologist, Dr. Larry H. Gaston, recommending that he be permanently exempted from the shaving requirement. *Id.*; *see also* Pl.'s Compl., ECF No. 1 Attach. No. 2. Despite presenting a copy of this letter to Sergeant Adkins on January 14, 2009, Plaintiff

contends that on January 16, 2009, in preparation for President-elect Obama's visit to Baltimore City, he was again ordered to shave by both Lieutenant Windle and Sergeant Adkins. Pl.'s Third Am. Compl. ¶¶ 13, 14.

Upon reporting for duty on January 17, 2009, Plaintiff contends that he was not clean-shaven, but sought to comply with the order to the best of his ability. *Id.* ¶ 17. Nevertheless, Plaintiff claims that Lieutenant Windle and Sergeant Adkins were dissatisfied with his efforts and thus presented him with a "Bic razor and a small bottle of shaving cream" and instructed him to shave "in front of everyone and without the use of water and/or a mirror." *Id.* Plaintiff contends that he complied with their instruction because he believed he had no other choice. *Id.*

Following this incident, Plaintiff alleges that lingering problems between Plaintiff and his superiors caused him to be denied benefits associated with his rank and tenure. *Id.* ¶ 18. Specifically, Plaintiff alleges that he received "an extremely poor" performance evaluation on or about January 24, 2009. *Id.* He further contends that he was not permitted to choose his foot details and vacation days according to his level of experience, and that his requests for overtime assignments were routinely denied. *Id.* Plaintiff claims that these actions resulted in a severe reduction of his pay causing financial hardship to himself and his family, and that Lieutenant Windle and Sergeant Adkins's retaliatory actions ultimately forced him to retire from the BPD on August 13, 2009. *Id.* ¶¶ 19, 20.

On October 18, 2010, Plaintiff received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") after it essentially rejected his claims. *Id.* ¶ 21; *see also* Pl.'s Compl., ECF No. 1 Attach. No. 1. Plaintiff initially brought this action against BPD, Lieutenant Windle, Sergeant Adkins, the Baltimore Police Commissioner Frederick H. Bealefeld, III, the former Mayor of Baltimore City Sheila Dixon, the Mayor of

3

Baltimore City Stephanie Rawlings Blake, the City Council of Baltimore, and the State of Maryland for injuries and damages sustained as a result of various alleged employment discrimination practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); 42 U.S.C. §§ 1983, 1981, 1985, 1986; Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*; and the common law of Maryland. Mem. Op. 1-2. On December 21, 2011, this Court Issued a Memorandum Opinion (ECF No. 35) dismissing the Title VII and FEPA disparate treatment and constructive discharge claims against Defendant BPD without prejudice. The Title VII and FEPA retaliation claims against Defendant BPD as well as the 42 U.S.C. §§ 1981, 1983 retaliation claims against Defendant BPD, Lieutenant Windle, and Sergeant Adkins were not dismissed. All other claims against all other Defendants were dismissed with prejudice. Plaintiff now seeks leave to amend his complaint against the Baltimore Police Department, Lieutenant Windle, and Sergeant Adkins in accordance with the Memorandum Opinion issued by this Court.

## STANDARD OF REVIEW

Purusant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once, as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, the Supreme Court explained that "in the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" 371 U.S. 178, 182 (1962). The United States Court of Appeals for the Fourth Circuit has "interpreted [Rule] 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been

futile.'" *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amended complaint is futile if it "fails to satisfy the requirements of the federal rules." *United States ex. rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted). Thus, if an amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the amendment is futile and should be denied. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

ANALYSIS

As discussed above, Plaintiff seeks leave to amend his complaint to comply with the Memorandum Opinion this Court issued on December 21, 2011 (ECF No. 35). Although filed in good faith, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 47) was "unintentionally and mistakenly in error," *see* Pl.'s Mot. Leave File Third Am. Compl. ¶ 3, ECF No. 48, and will thus be disregarded by this Court. Plaintiff's Third Amended Complaint (ECF No. 48 Attach. No. 1) contains four counts alleging various state and federal law violations committed by Defendants BPD, Lieutenant Windle, and Sergeant Adkins. To the extent that Plaintiff's Third Amended Complaint complies with the Memorandum Opinion, leave to amend will be granted. Alternatively, to the extent that Plaintiff's Third Amended Complaint is futile with respect to substantive and procedural requirements, leave to amend will be denied.

**I.     Count I: Retaliation in Violation of Title VII and FEPA by Defendants BPD, Lieutenant Windle, and Sergeant Adkins**

Count One of Plaintiff's Third Amended Complaint alleges retaliation in violation of Title VII and FEPA by Defendants BPD, Lieutenant Windle, and Sergeant Adkins. Pl.'s Third Am. Compl. ¶ 22-25. The claim against Defendant BPD will be discussed separately from the claim against Lieutenant Windle and Sergeant Adkins. In its Memorandum Opinion, this Court

held that Plaintiff's allegation with respect to Defendant BPD satisfies the elements of a Title VII retaliation claim. Mem. Op. 18. Pursuant to the Maryland Court of Appeals decision in *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007), this Court applies "Title VII case law in adjudicating FEPA claims." Thus, Plaintiff's allegations with respect to Defendant BPD also satisfy the elements of a FEPA retaliation claim. To the extent that Count One of the Third Amended Complaint alleges retaliation in violation of Title VII and FEPA against Defendant BPD, Plaintiff's Motion for Leave to File a Third Amended Complaint is GRANTED.

In its Memorandum Opinion, this Court held that because Lieutenant Windle and Sergeant Adkins were Plaintiff's supervisors, they cannot be individually liable for alleged Title VII violations. Mem. Op. 19 (citing *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)). Likewise, this Court found that Lieutenant Windle and Sergeant Adkins also cannot be individually liable for alleged FEPA violations. Mem Op. 20. This Court dismissed with prejudice Plaintiff's retaliation claims against Lieutenant Windle and Sergeant Adkins under both Title VII and the FEPA. *Id.* at 20, 24. Thus, to the extent that Count One of the Third Amended Complaint alleges retaliation in violation of Title VII and FEPA against Lieutenant Windle and Sergeant Adkins, Plaintiff's amended complaint is futile and his Motion for Leave to File a Third Amended Complaint is DENIED.

    **II.**     **Count II: Violation of 42 U.S.C. § 1981 by Defendants BPD, Lieutenant Windle, and Sergeant Adkins**

Count Two of Plaintiff's Third Amended Complaint alleges a violation of 42 U.S.C. § 1981 by Defendant BPD, Lieutenant Windle, and Sergeant Adkins. Pl.'s Third Am. Compl. ¶¶ 26-29. The claim against Defendant BPD will be discussed separately from the claim against Lieutenant Windle and Sergeant Adkins. In its Memorandum Opinion, this Court noted that since the requirements to establish a *prima facie* case of discrimination under Title VII, 42

U.S.C. § 1981, and 42 U.S.C. § 1983 are the same, where Plaintiff was able to satisfy the *prima facie* requirements for a claim of disparate treatment, retaliation, or constructive discharge against Defendant BPD under Title VII, he also satisfied the prima facie requirements for the same claim under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Mem. Op. 14 (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). Since Plaintiff's allegations satisfied the *prima facie* requirements of a retaliation claim in violation of Title VII against Defendant BPD, they also satisfy the *prima facie* requirements of a retaliation claim in violation of 42 U.S.C. § 1981 against Defendant BPD. Mem Op. 19.

Although actors may not be individually liable under Title VII, in its Memorandum Opinion this Court noted that where actors "'authorize, direct, or participate in' a discriminatory act," they may be individually liable under 42 U.S.C. § 1981. Mem Op. 20 (citing *Atkins v. Winchester Homes*, CCB-06-278, 2007 WL 269083, at *9 (D. Md. Jan. 17, 2007)). Because Plaintiff alleges Lieutenant Windle and Sergeant Adkins directed and participated in the discriminatory acts against him, Plaintiff's allegations also satisfy the *prima facie* requirements for a retaliation claim with respect to Lieutenant Windle and Sergeant Adkins under 42 U.S.C. § 1981. Thus, since Count Two adequately alleges retaliation in violation of 42 U.S.C. § 1981 against Defendants BPD, Lieutenant Windle, and Sergeant Adkins, Plaintiff's Motion for Leave to File a Third Amended Complaint as to Count Two is GRANTED.

### III. Count III: Disparate Treatment in Violation of Title VII and FEPA by Defendant BPD

Count Three of Plaintiff's Third Amended Complaint alleges disparate treatment in violation of Title VII and FEPA by Defendant BPD. Pl.'s Third Am. Compl. ¶ 37. In order to demonstrate a *prima facie* case of disparate treatment, a plaintiff must allege that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an

adverse employment action; and (4) similarly situated employees outside of his class received more favorable treatment. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). In his First Amended Complaint, Plaintiff adequately alleged that as an African American he is a member of a protected class. Mem. Op. 16. Plaintiff's claims that his compensation was decreased and that he did not receive benefits associated with his position as a result of the shaving incident were adequate to allege that he was subjected to adverse employment actions. *Id.* However, Plaintiff's First Amended complaint failed to include adequate allegations with respect to his satisfactory job performance and similarly situated employees outside of his class who received more favorable treatment. *Id.* Accordingly, this Court dismissed Plaintiff's disparate treatment claim without prejudice. *Id.* at 17.

In his Third Amended Complaint, Plaintiff attempts to rectify the shortcomings of his First Amended Complaint with respect to the second and fourth elements of his disparate treatment claim. Plaintiff alleges that prior to the shaving incident, he was "one of the top investigator[s] in the unit and had never received a poor performance rating." Pl.'s Third Am. Compl. ¶ 35. Plaintiff also claims he had "an exemplary, unblemished performance record throughout his career up to this point." *Id.* These claims are adequate to allege that Plaintiff's job performance was satisfactory, the second element of a *prima facie* case for disparate treatment.

To establish the similarly situated prong of his disparate treatment claim, Plaintiff claims that after the shaving incident, he was not able to choose his foot details and vacation days pursuant to his senority. Caucasian detectives, Plaintiff contends, worked more preferable foot details, and a less senior Caucasian detective was given priority over Plaintiff in choosing vacation days. *Id.* ¶ 36. Plaintiff also alleges that while he was repeatedly denied the

opportunity to earn overtime, Caucasian detectives within his unit enjoyed significant amounts of overtime. *Id.*

In Defendant's Response in Opposition, Defendant BPD argues that Plaintiff's Third Amended Complaint is futile because the Caucasian detectives referenced by Plaintiff as comparators do not have PFB, and are thus not "similarly situated" in all relevant respects. Def. Resp. Opp'n 7, ECF No. 49. However Defendant BPD incorrectly identifies the adverse employment action in question with respect to determination of the relevant comparative class. In its Memorandum Opinion, this Court noted that the adverse employment action in question is not that the Plaintiff was required to shave. Mem. Op. 16. Rather, the alleged adverse employment action was the discriminatory assignment of foot details, vacation days, and overtime. *Id.* Thus, the relevant similarly situated comparators are detectives outside of Plaintiff's class who have the same supervisors, level of seniority, and prior performance ratings as Plaintiff. *See Haywood v. Locke*, 386 F. App'x 355, 359 (4th Cir. 2010) ("Such a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and. . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Consequently, Plaintiff's claims in his Third Amended Complaint that Caucasian detectives in his unit received preferential treatment in the assignment of foot details, vacation days, and overtime are adequate to allege that similarly situated employees outside of his class received more favorable treatment, the fourth element of a *prima facie* case for disparate treatment.

Defendant makes the alternative argument that Plaintiff's allegations in his Third Amended Complaint are futile because they are in direct contradiction with Plaintiff's statements

in his EEOC Complaint (EFC No. 1 Attach. No. 4) and Questionnaire (EFC No. 1 Attach. No. 3). Def. Resp. Opp'n 11 (citing *Pesci v. IRS*, 67 F. Supp. 2d 1189, 1191-92 (D. Nev. 1999)). While Plaintiff's Third Amended Complaint alleges facts that were not included in his EEOC complaint and questionnaire, the additional facts are not in direct contradiction with any of the statements in the EEOC complaint and questionnaire. Defendant BPD's only allegation of such a direct contradiction is with respect to the specifics about the assignment of foot details. In the EEOC questionnaire, Plaintiff claimed "[e]ach month every detective in the unit must walk foot (2) twice in the Eastern Dist[rict] in uniform." EEOC Intake Questionnaire 8. In his Third Amended Complaint, Plaintiff claims he was "scheduled for two foot details per month on the weekends while Caucasian detectives worked one foot detail per month on week days [sic]." Pl.'s Third Am. Compl. ¶ 36. While this statement is ambiguous, it could be reasonably interpreted to mean that Caucasian detectives were assigned one of their two foot details per month on a weekday, an interpretation that would not contradict Plaintiff's statement in the EEOC questionnaire. Thus, while the factual allegations in the Third Amended Complaint and the EEOC complaint and questionnaire are not identical, they do not directly contradict one another and Defendant BPD fails to establish that Count Three of Plaintiff's Third Amended Complaint is futile.

Finally, Defendant BPD argues that Count Three of Plaintiff's Third Amended Complaint is futile because Plaintiff has failed to exhaust his administrative remedies as to the newly alleged facts in the Third Amended Complaint. Def. Resp. Opp'n 11-14. Defendant BPD correctly notes that a party must exhaust his or her administrative remedies with the EEOC prior to bringing a Title VII claim in federal court, and that the scope of the subsequent Title VII lawsuit is determined by the contents of the EEOC charge. *See Jones v. Calvert Group Ltd.*, 551

F.3d 297, 300 (4th Cir. 2005) ("The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents."). However, the additional facts alleged by Plaintiff in his Third Amended complaint do not alter the scope of his discrimination claim, that of disparate treatment with respect to the assignment of foot details, vacation days, and overtime. *See id.* ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."). While Plaintiff has elaborated as to the facts supporting his original discrimination claim, he has not alleged discrimination on an alternative basis, and Defendant BPD thus fails to establish that Count Three of Plaintiff's Third Amended Complaint is futile. Since Count Three alleges all of the necessary elements for a *prima facie* case of disparate treatment in violation of Title VII and FEPA against Defendant BPD, Plaintiff's Motion for Leave to File a Third Amended Complaint as to Count Three is GRANTED.

### IV. Count IV: Constructive Discharge in Violation of Title VII and FEPA by Defendant BPD

Count Four of Plaintiff's Third Amended Complaint alleges constructive discharge in violation of Title VII and FEPA by Defendant BPD. Pl.'s Third Am. Compl. ¶ 41. In order to state a claim for constructive discharge, a plaintiff must show that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (internal quotation marks omitted)). Thus, Plaintiff must establish (1) that his employer's actions were deliberate; and (2) that a reasonable person would find the resulting work conditions intolerable. *Id.* (citing *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004)).

In his Third Amended Complaint, Plaintiff attempts to rectify the shortcomings with respect to adequately pleading each element of his constructive discharge claim. Plaintiff must first allege that Defendant BPD's actions were intended to force Plaintiff to quit. *Id.* (citing Matvia, 259 F.3d at 272 (4th Cir. 2001). Deliberateness may be established by "actual or circumstantial evidence, including evidence of actions that single a plaintiff out for differential treatment." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994); *see also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995) ("[E]vidence that the employer failed to act in the face of known intolerable conditions and did not treat all employees identically may create an inference that the employer was attempting to force the plaintiff to resign.") (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir. 1989) (Wilkinson, J., dissenting), *vacated in part*, 900 F.2d 27, 28 (1990) (*en banc*) (adopting the dissent from the panel opinion)). The Fourth Circuit has held that an employer must "necessarily be held to intend the reasonably foreseeable consequences of its actions." *Martin*, 48 F.3d at 1355 (4th Cir. 1995).

In his Third Amended Complaint, Plaintiff alleges that his resignation was a reasonably foreseeable result of Defendants' (1) blatant neglect of and disregard for his health and safety concerns, (2) issuance of a poor performance review in the week following the incident, and (3) discriminatory assignment of foot details, vacation days, and overtime hours. Pl.'s Third Am. Compl. ¶ 40. Thus, Plaintiff adequately alleges that he was singled out for differential treatment to an extent allowing a plausible inference that the BPD intended to force Plaintiff to quit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

Plaintiff must also allege that a reasonable person would find the work conditions resulting from Defendant BPD's actions intolerable. To do so, Plaintiff's complaint alleges that the previously discussed discriminatory conduct of Defendant BPD "extended into unbearable conditions" when Plaintiff and Sergeant Adkins were out on a case together and "Defendant Adkins ignored Plaintiff's request to use the bathroom," refusing to stop to allow Plaintiff to relieve himself. Pl.'s Third Am. Compl. ¶ 41. In analyzing intolerability of working conditions, the Fourth Circuit has previously held that a trier of fact could reasonably find intolerability where a plaintiff's coworkers and supervisor constantly subjected him to racial epithets and public embarrassment, and subsequent to his complaints, gave him a poor performance evaluation and withheld company benefits. *Amirmokri v. Balt. Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995). Alternatively, the Fourth Circuit has found that when a plaintiff was constantly ignored by coworkers, her working conditions could not reasonably be described as intolerable. *Munday v. Waste Mgmt. of N. Amer., Inc.*, 426 F.3d 239, 244 (4th Cir. 1997). In *Munday* the Fourth Circuit emphasized a lack of change in a plaintiff's employment status and lack of evidence that the plaintiff ever received an unsatisfactory performance evaluation. Plaintiff's allegations with respect to the intolerability of his working environment are factually parallel to those found adequate to establish intolerability in *Amirmokri*. Like the plaintiff in *Amirmokri*, Plaintiff has alleged public embarrassment, poor performance evaluations subsequent to his complaints, and withholding of company benefits. Thus, Plaintiff has adequately alleged facts that make plausible an inference that his working conditions were intolerable.

Defendant BPD attempts to undermine Plaintiff's claim by noting that the Fourth Circuit has consistently emphasized "mere dissatisfaction with work assignments, a feeling of being

unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004)); *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004). For example, in *Heiko*, the Fourth Circuit concluded that comments of co-workers concerning the allowance of the plaintiff to alter his work schedule for medical treatment could be construed as insensitivity, but could not rise to the level of intolerability. 434 F.3d at 263 (4th Cir. 2006). Defendant also relies on *Honor*, in which the Fourth Circuit concluded that the plaintiff's work environment was not intolerable where the environment was described as "professionally unfulfilling," and where plaintiff's complaints concerned his interactions with a co-worker who had no supervisory role over the plaintiff. 383 F.3d at 187 (4th Cir. 2004). Conversely, Plaintiff in this case has adequately alleged more than unpleasant working conditions and unfair criticism. Aside from his factual allegations, Plaintiff also refers to "abhorrent treatment" and a "hostile work environment" and constantly mentions the "intentional" activity of Defendants'. Pl.'s Third Am. Compl. ¶ 41. Defendant thus fails to establish that Count Four of Plaintiff's Third Amended Complaint would be futile. Since Count Four alleges all of the necessary elements for a *prima facie* case of constructive discharge, to the extent that Count Four alleges constructive discharge in violation of Title VII and FEPA against Defendant BPD, Plaintiff's Motion for Leave to File a Third Amended Complaint as to Count Four is GRANTED.

CONCLUSION

For the foregoing reasons, leave to amend is GRANTED as to Plaintiff's Third Amended Complaint for Count One as it applies to the Defendant Baltimore Police Department, but is DENIED as it applies to Lieutenant Windle and Sergeant Adkins. Leave to amend is GRANTED as to Counts Two, Three, and Four in their entirety.

A separate order follows.

Dated:   November 20, 2012

/s/ _____
Richard D. Bennett
United States District Judge